UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No.3:23-cr-38-MCR

JUSTIN JAMAAL NETTLES
_____/

## ORDER OF DETENTION

Defendant has been charged in an indictment with one count of possession of a firearm and ammunition by a convicted felon under 18 U.S.C. § 922(G)(1), namely a Glock 9 millimeter pistol, and ammunition.  The prior felony convictions as set forth in the indictment are (1) an August 29, 2007 conviction in the State of Florida for battery; (2) a February 2, 2011 conviction in the State of Florida for possession of cocaine; (3) a November 15, 2011 conviction in the State of Florida for fleeing/eluding law enforcement with siren and lights activated; and (4) a June 7, 2013 conviction in the State of Florida for attempted robbery with a deadly weapon, aggravated battery with a deadly weapon, aggravated assault by threat with a firearm, possession of a firearm by a convicted felon, and driving while license revoked pursuant to Habitual Offender.

Defendant appeared for his initial appearance on Monday, July 10, 2023 and

the Government orally moved for detention. The statutory basis for detention is 18 U.S.C. §§ 3142(f)(1)(E) and 3142(f)(1)(2). Thus, in accordance with the Bail Reform Act, 18 U.S.C. §3142(f), a detention hearing was held in this matter on July 13, 2023.

The Bail Reform Act of 1984 provides a framework for determining whether pretrial detention is appropriate. *See* 18 U.S.C. § 3141, *et seq.* Although under the Act, only a limited group of offenders should be denied bail pending trial, *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir.2007), the Act also reflects "the deep public concern ... about the growing problem of crimes committed by persons on release and the recognition that there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community," *United States v. Chimurenga*, 760 F.2d 400, 403 (2d Cir.1985) (quotations omitted). "Congress has determined that [w]hen there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate." *Id.* (quotations omitted) (alteration in original).

A court may release a defendant pending trial on appropriate conditions, *id.* § 3142(a)(2), or detain the defendant, *id.* § 3142(a)(4). *See Reno v. Koray*, 515 U.S.

50, 57 (1995).  The court shall detain a defendant if it determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  *Id.* § 3142(e)(1). Because a felon in possession charge is not one of the enumerated charges under the Act which carries with it a rebuttal presumption of detention, the burden of production and persuasion is on the Government to show Defendant is a risk of non-appearance or a risk of danger.  *See United States v. Salerno*, 481 U.S. 739, 750 (1987); *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990).

A finding of risk of flight must be supported by a preponderance of the evidence, while a finding of danger must be supported by clear and convincing evidence.  *See Quartermaine*, 913 F.2d at 917.  "Clear and convincing evidence" entails more than a preponderance of the evidence, but less than evidence establishing a fact beyond a reasonable doubt.  *Addington v. Texas*, 441 U.S. 418, 423-25 (1979).  "To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty." *United States v. Chimurenga,* 760 F.2d 400, 405 (2d Cir. 1985).  A court may detain a defendant based on either risk of nonappearance or his dangerousness.  *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988).

To determine whether a defendant should be released on conditions or detained, courts consider the following factors:  (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g). Although § 3142(g) identifies the factors the courts should consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant. *See generally* 18 U.S.C. § 3142(g).  Instead, the weight given to each factor will inevitably vary from case to case and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight.  *United States v. Zhang*, 55 F.4th 141, 150 (2d Cir. 2022).

The Court's consideration of each of those factors as they apply to Defendant's case is discussed below.

A. <u>Nature and Circumstances of the Offense Charged</u>.

When considering the nature and circumstances of the offense, the court considers "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device."  18 U.S.C. § 3142(g)(1).  Here, as stated

3:23-cr-38-MCR

above, Defendant has been charged with an offense involving a firearm.  A felon in

possession charge, however, is not considered a crime of violence.  *See United States*

*v. Johnson*, 399 F.3d 1297, 1299 (11th Cir. 2005).

The charge arises out of a January 18, 2023 arrest by the Escambia County

Sheriff's Office.  According to the arrest report, Govt's Exhibit 2, law enforcement

approached Defendant as he got into a driver's seat of an idling, unoccupied vehicle.[1]

After making contact, Defendant advised law enforcement that he did not have a

driver's license.  When ordered to exit the vehicle, Defendant ran on foot and failed

to yield to initial commands to stop.

Once detained, officers searched Defendant's person and found a black 9mm

magazine in his right pocket, as well as a key for the vehicle.  Also, officers saw in

plain view a firearm inside the vehicle on the driver's side floorboard.  The firearm

was a Glock 9 mm handgun, which was loaded with 7 rounds in the "Drum" style

magazine.  *See* Govt's Exhibit 1.  Officers also located a white powdery substance,

which field tested positive for cocaine.  It is well established that guns and drugs are

a dangerous combination.  *See, e.g.*, *Whittier v. Bruna*, 343 F. App'x 505, 509 (11th

Cir. 2009) (stating "we have . . . repeatedly noted the dangerous, and often violent,

---

[1] The vehicle was a rental vehicle, which had been rented by a friend of the Defendant.  The friend, however, was not present at the time of the incident.

combination of drugs and firearms").  Moreover, as will be discussed in subsection (C) below, Defendant was released from State custody less than 2 years ago after being convicted and sentenced for aggravated assault with a deadly weapon – a charge which also involved a firearm.

Given the circumstances of the arrest, the fact that the gun was loaded, had a drum style magazine, ammunition was found in the Defendant's pocket, cocaine was found in the vehicle, and Defendant had previously used a firearm in an assault, the Court considers this charge to be a serious charge that goes beyond more than a run of the mill possession of a gun charge.

## B. The Weight of the Evidence:

This factor requires the court to consider evidence proffered by the Government which it intends to use at Defendant's trial.  In considering the weight of the evidence, the court considers both the weight of the evidence of dangerousness and the government's underlying case against the defendant.  *United States v. Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010); *United States v. Norris*, 188 F. App'x 822, 830 (11th Cir. 2006).  "While it is true that the Court's determination of this factor 'neither requires nor permits a pretrial determination of guilt,' the Court can still weigh the evidence and determine whether it proves that the defendant poses a risk to others and/or is at risk of flight."  *United States v. Slatten,* 286 F. Supp. 3d

3:23-cr-38-MCR

61, 67–68 (D.D.C. 2017) (internal citations omitted), *aff'd,* 712 F. App'x 15 (D.C. Cir. 2018); *United States v. Pirk,* 220 F. Supp. 3d 402, 410 (W.D.N.Y. 2016).

The weight of the evidence is a common-sense consideration. For instance, if the evidence against a defendant is overwhelming, credible, helpful, and important to the Government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true. Alternatively, if the only evidence against a defendant is circumstantial, contradicted, or unreliable, the defendant has less reason to duck court proceedings in the interest of proving his innocence and that evidence does not support viewing the defendant as a risk to the safety of the community. As such, the weight of the evidence against defendant will be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate. *United States v. Blackson*, 2023 WL 1778194, at \*10 (D.D.C. Feb. 6, 2023).

Here, the Court finds the weight of the evidence to be strong and to also weigh in favor of detention. According to the ESCO arrest report, Defendant was the only person who got in the vehicle, he had the vehicle's key in his pocket, he had ammunition in his pocket, the gun was found on the driver's side floorboard, cocaine was found in the car, and Defendant has a prior history of being in possession of a

3:23-cr-38-MCR

firearm and also has admitted to using cocaine on other occasions.

### C. The History and Characteristics of the Defendant.

In considering the history and characteristics of a defendant, the court considers such matters as the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings.   18 U.S.C. § 3142(g).

The United States Probation Office interviewed Defendant on July 10, 2023. According to the Pretrial Service Report ("PTSR"), Defendant is 36 years old and was released in August 2021, from state custody after serving approximately 8 years of a 10-year sentence for aggravated assault with a deadly weapon.  Defendant is a lifelong resident of Pensacola and both before and after his incarceration has lived with his mother "off and on."  Since being released, Defendant split his time between living with his mother and his girlfriend.  Defendant has two children, and one on the way, but does not financially support either child.   As for employment, Defendant has been working "under the table," installing sheetrock.

Defendant has not been diagnosed with any mental health issues, but his mother reports that he would benefit from counseling, particularly to deal with his

time in prison.[2]  Defendant, however, does have a severe substance abuse problem,

having used cocaine since he was 17, and admitted during the interview that he

would test positive for cocaine.  Moreover, he told the probation officer during the

interview that when he was arrested on this Court's warrant, he would not let officers

into the residence until he finished his joint.  Defendant's mother, however, was

unaware of his substance abuse.  She was also unaware that he is expecting a child

and said she has never seen him drive the car that he was in at the time of his arrest.

She was also not present when he was arrested on or about July 7, for the instant

federal charge.

In addition to providing the following background information, the PTSR also

summarized Defendant's criminal history, which is extensive, and started at the age

of 16.  At age 17, Defendant was convicted of battery, and, fleeing and eluding law

enforcement.  At age 23, he was convicted of possession of cocaine, and while on

probation for that charge, committed new offenses including fleeing and eluding law

enforcement and resisting arrest without violence.  At age 25, Defendant was

convicted of aggravated assault with a deadly weapon, aggravated battery – use of a

deadly weapon, robbery with a weapon, and possession of a weapon or ammunition

---

[2] Defendant's mother, Ms. Davis, testified at the hearing.

3:23-cr-38-MCR

by a convicted felon.   According to the evidence proffered by the Government regarding this incident, which was not disputed by the defense, Defendant approached a group of people in a parking lot and hit the victim several times with a gun.

As stated above, Defendant was sentenced to 10 years' of incarceration for those charges, and was released from custody in August 2021.  Less than two years later, he was arrested by the ESCO for possession of a weapon by a convicted felon, possession of cocaine, and resisting arrest.  Those charges have been *nolle prossed* in favor of the federal indictment.

Also, at the time of the arrest for the federal indictment, Defendant told law enforcement officers, in a recording interview, that he ran because he was "scared," stating "I aint going to lie though I'm gonna run, you look at my record, I'm gonna run, regardless, I ran and didn't have to run before, you know what I'm saying?  It's just my freak of nature."  Then, in reference to the July 7 arrest, Defendant stated, "If I could have run right then, I'm gonna run, I'm not going to lie to you.  If I could have gotten out of there and ran, I would have ran, I'm going to run every time."  Defendant, however, was not aware that he had been indicted by the grand jury or that agents were on their way to arrest him.

Given Defendant's lack of stable employment, serious substance abuse issues,

history of violence, prior felon in possession charge, history of eluding law enforcement, and failure to refrain from criminal conduct, even after having spent 8 years in state custody, the Court finds Defendant's history and characteristics weigh in favor of detention.

4.      <u>The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release</u>:

Finally, the Court must consider the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release.  As part of this factor, the Court considers whether there are any conditions that can be imposed which would reasonably assure the Court that Defendant will not be a risk of non-appearance or a risk of danger.  Defendant argues that placing Defendant in the custody of his mother, requiring him to participate in GPS monitoring, home detention, and substance abuse testing and treatment are sufficient to give the Court that assurance.  After careful thought and consideration, the Court cannot agree.

Ms. Davis is certainly a more than suitable third-party custodian.  She has a stable employment, stable residence, and no criminal history.  However, the Court cannot overlook the fact that throughout Defendant's entire life he has lived with his mother and had her love and support; and yet, she was unable to keep him from engaging in serious and violent crimes.  Moreover, it appears that there are many

aspects of Defendant's lifestyle that Ms. Davis was unaware of, including a new child on the way, a cocaine problem that began at the age of 17, and possession of firearms.  The Court, therefore, cannot be reasonably assured that even under a more careful eye from Ms. Davis and the USPO that Defendant will not continue to do drugs, possess firearms, and flee and elude from law enforcement.   Neither electronic monitoring nor the GPS system of surveillance defeats the resolute, resourceful, energetic, and non-compliant releasee.   *See United States v. Benevolence Int'l Found., Inc.*, 222 F.Supp.2d 1005, 1007, (N.D.Ill.2002).  While Defendant does not have a history of not appearing for court proceedings, that is because he has spent a majority of his adult life in prison.[3]  What he does have is a history of failing to follow conditions of probation by engaging in new law violations.

Thus, the Court believes Defendant poses a serious danger of harm to the community if released.  As discussed above, Defendant has a penchant for possessing firearms while engaging in other criminal activities.  He has a history of eluding law enforcement.  The combination of those two characteristics pose a

---

[3] At the age of 23, after having his probation revoked for a new law violation, Defendant was sentenced to approximately 1 year in jail.  Less than 2 years later is when Defendant was charged with, and eventually pled no contest to, the aggravated assault with a deadly weapon.  Thus, Defendant was in prison from approximately the age of 25 to 33.

3:23-cr-38-MCR

serious risk of danger to the community.  *See U.S. v. Estill,* 2009 WL 3027798, at

*3 (S.D. Ohio Sept. 23, 2009) (noting that "fleeing and eluding itself is potentially

more dangerous when firearms are involved" because "a firearm could quickly

change the confrontation from a scuffle to a shootout"); *U.S. v. Young,* 580 F.3d 373,

378 (6th Cir. 2009) ("fleeing and eluding involves violent conduct that poses a

serious potential risk of physical injury to others"); *U.S. v. Doyle*, 678 F.3d 429, 434

(6th Cir. 2012) ("the entire purpose of intentional flight is to avoid detention or arrest

by means that nearly always pose a substantial danger to others, including pursuing

officers").  Moreover, Defendant is facing a potential penalty of up to 15 years of

incarceration for this charge.  Given the facts of this particular case, the Court is not

reasonably assured that even with the conditions Defendant will not, if released,

continue to engage in conduct which could put his life, those around him, and law

enforcement in danger.

Accordingly, it is Ordered:

The Defendant is committed to the custody of the Attorney General or her

designated representative for confinement in a corrections facility separate, to the

extent practicable, from persons awaiting for serving sentences or being held in

custody pending appeal.  The Defendant shall be afforded a reasonable opportunity

for private consultation with defense counsel.  On order of a court of the United

States or on request of any attorney for the government, the person in charge of the

corrections facility shall deliver the Defendant to the United States marshal for the

purpose of an appearance in connection with a court proceeding.

Dated:  July 13, 2023


*s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**